UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRIGANTINE DEVELOPMENT, LLC

     Debtor.

_____/

BRIGANTINE DEVELOPMENT, LLC,

     Plaintiff,

v.                               Case No. 04-74425

MID-STATES CONTRACTING, INC.      HONORABLE AVERN COHN
a Michigan corporation, GRS CORPORATION,
a Michigan corporation, ROBERT PASEK, an
individual, and NICHOLAS PICCIRILLI,
an individual, jointly and severally

     Defendants.

_____/

**MEMORANDUM AND ORDER**

I.  Introduction

     This is a bankruptcy appeal arising out of an adversary proceeding in the estate

of Brigantine Development, LLC (Brigantine).[1]  Defendant-Appellant Robert Pasek

(Pasek) appeals from an order of the Bankruptcy Court finding him personally liable for

_____

     [1]This is the second appeal from the Bankruptcy Court in this case.  The prior
appeal concerned the Bankruptcy Court's order granting Brigantine's motion to
invalidate a construction lien filed by R&D Contracting on the grounds that the lien was
not filed within 90 days after R&D last worked for Brigantine.  The Court affirmed the
Bankruptcy Court.

$617,257.89 based on a violation of the Michigan Builder's Trust Fund Act, M.C.L. §
570.151.  Pasek also appeals the Bankruptcy Court's order striking certain exhibits
attached to Pasek's trial brief.  For the reasons that follow, the decision of the
Bankruptcy Court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for
further proceedings consistent with this opinion.

II.  Background

A.

Brigantine owned a waterfront residential real estate development project along
the Clinton River in Harrison Township known as Brigantine Estates.  It is approximately
43 acres.  In November 2001, Brigantine entered a contract with R&D Contracting and
LLC/Midstates Contracting, Inc. to perform underground utilities and road paving work
on the project.  The contract was signed by Pasek for R&D; there was no signatory for
Midstates Contracting, Inc.  Pasek and Piccirilli were officers of R&D, GRS Corp. and
Midstates Contracting, Inc.

On January 23, 2002, Brigantine filed a petition under Chapter 11.  At the time of
filing, Brigantine had several construction lien creditors who filed suit against it in the
Macomb County Circuit Court.  On April 28, 2002, Brigantine confirmed its plan of
reorganization.  The plan provided for, inter alia, the sale of lots in Brigantine Estates.

Meanwhile, on February 13, 2002, R&D filed for bankruptcy.  On May 30, 2002,
R&D filed its business plan, stating it intended to terminate operations as of May 2002.

On June 11, 2002, Brigantine filed a Adversary Complaint against Midstates
Contracting, Inc., GRS Corporation, Pasek, and Nicholas Piccirilli making various claims
regarding work performed on the project.  Specifically, count I claims breach of contract

2

against Mid-States for performing work in a defective manner, failing to perform work in conformance with the contract, failing to complete the work within the time required under the contract, failing to promptly pay all laborers, suppliers, and materialman, and failing to supply the necessary labor, material, and equipment.  Count II claims a violation of the MBTFA, alleging that Mid-States, Pasek, and Piccirilli were trustees of the funds disbursed by Brigantine in connection with work on the project and that defendants violated the act by using funds without first paying laborers, subcontractors, and/or materialmen who provided labor or services on the project.  Count III asks for an accounting of all the building contract funds.  Count IV claims a fraudulent conveyance, alleging that defendants transferred building contract funds to themselves and/or others with the intent to defraud Brigantine.  Count V claims a civil conspiracy to misappropriate funds paid by Brigantine on the project.  Count VI seeks injunctive relief preventing the transfer of funds.  Count VII claims negligence against Mid-States and Piccirilli regarding the work performed on the project.

B.

The parties waived their right to a trial on the adversary complaint and instead agreed to rely on trial briefs and joint exhibits.  On June 30, 2004, Brigantine and defendants filed trial briefs.  Attached to defendants' trial brief were four exhibits which were not part of the joint exhibits.  Almost two months later, on August 19, 2004, Brigantine filed a motion to strike the defendants' trial exhibits and/or leave to file a reply brief on the grounds that they were not included the in joint exhibits and were not disclosed to Brigantine during discovery.  Defendants filed a response.  A hearing was held on September 20, 2004 at which the Bankruptcy Court granted the motion to strike,

3

stating:

> The motion to strike is granted.  Submitting a brief which relied on documents not in evidence was a breach of the parties' agreement and of proper Court procedure and protocol.  It should not have been done, at least not without proper process.
> The four exhibits and the trial brief that they are attached to are all stricken.  The Court will allow the defendants 48 hours within which to submit a substitute trial brief that strikes all references to these – to these exhibits.

Transcript of September 20, 2004 hearing at p. 4.

Five weeks later, on October 27, 2004, the Bankruptcy Court issued an Opinion dismissing defendants Piccirilli, GRS Corp. and Mid-States and all of Brigantine's claims against all defendants except for a violation of the MBTFA.  The Bankruptcy Court found that Pasek had violated the MBTFA and entered a judgment against him in the amount of $617,257.89.

Pasek appeals both rulings of the Bankruptcy Court.   Pasek, however, has not challenged the Bankruptcy Court's decision finding him personally liable under the MBTFA; he challenges only the Bankruptcy Court's finding as to the amount of his liability.

### III.  Analysis

### A.  Standard of Review

This Court reviews factual findings made by a bankruptcy judge for clear error. In re Baker & Getty Fin. Servs., 106 F.3d 1255, 1259 (6th Cir. 1997). Conclusions of law are reviewed de novo.  In re Zaptocky, 250 F.3d 1020, 1023 (6th Cir. 2001).  See also In re Lopez, 292 B.R. 570, 573 (E.D. Mich. 2003).

The Bankruptcy Court's decision to strike exhibits is reviewed for an abuse of discretion.  See United States v. Lucas, 357 F.3d 599 (6th Cir. 2004).

4

B.  Preliminary Matter

Pasek's brief on appeal contains references to newspaper articles and other documents regarding Brigantine's developer, David White, and his legal troubles stemming from his involvement with developing Brigantine and the affect this may have caused on R&D's work.  Brigantine objects to the inclusion of these so-called "new facts" and "new documents" as violating due process, the rules of evidence, and/ro rules of civil procedure.

The Court has not considered any of the information regarding White, which is wholly irrelevant to the issues on appeal.

C.  The MBTFA

The MBTFA provides:

> Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.
>
> Sec. 2. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.
>
> Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

5

M.C.L. § 570.151.

As the Michigan Court of Appeals has explained:

> The prima facie elements of a civil cause of action brought under the act include (1) the defendant is a contractor or subcontractor engaged in the building construction industry, (2) a person paid the contractor or subcontractor for labor or materials provided on a construction project, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the specific project.

DiPonio Const. Co., Inc. v. Rosati Masonry Co., Inc., 246 Mich. App. 43, 48 (2001).

### D. Pasek's Liability under the MBFTA

#### 1. Relevant Background Facts

R&D began work on the Brigantine project on September 4, 2001. Brigantine issued two checks to R&D totaling $698,919.50 for its work on the project, as follows:

| | | |
|---|---|---|
| Check 1355 | issued Sept. 28, 2001 | $198,892 |
| Check 1372 | issued Nov. 5, 2001 | $498,027.50 |

The $198,892 check was deposited into GRS's bank account on October 2, 2001. These funds were all disbursed by the end of October 2001. The $498,027.50 check was deposited into GRS's bank account on November 2, 2001. These funds were all disbursed by November 30, 2001.

It is undisputed that the $698,919.50 was impressed with a trust under the MBTFA. The question before the Bankruptcy Court was how much, if any, of this amount was disbursed in violation of the MBTFA, i.e. for expenses other than to pay laborers, subcontractors, and materialmen during the relevant time from October to the end of November 2001. The Bankruptcy Court found that $617,257.89 was disbursed

6

in violation of the MBTFA.

The best way to analyze defendants' expenditures is to examine each claimed category of expenses, as did the Bankruptcy Court.

## 2.   Labor Expenses

The defendants asserted that they paid $269,375.59 in labor expenses.  The Bankruptcy Court examined defendants' documentation, in the form of payroll checks and a payroll summary.  The Bankruptcy Court concluded that defendants could not be credited for this amount because the documentation covered the time period of December 23, 2001 through June 30, 2002, which was outside the relevant time period for tracing the trust funds.  While the Court does not disagree with this conclusion based on the evidence before the Bankruptcy Court, it does nonetheless take issue with this holding because of the Bankruptcy Court's failure to consider the exhibits attached to defendants' trial brief.  Exhibit 1 of the original trial brief copies of payroll checks issued by R&D during the relevant time period which is particularly significant.  While defendants are not to be condoned for such late disclosure, Pasek testified at deposition, which occurred days before the scheduled trial, that he was still looking for additional checks which would be provided to Brigantine if they could be located.  Thus, Brigantine was aware of the possibility of additional checks being furnished by defendants.

Moreover, it is clear that the checks are relevant as to whether defendants used some of the funds impressed with the trust to pay laborers during the relevant time. According to Pasek, the checks total over $120,000.00, not an insignificant amount. While defendants never asked to reopen the record to include the checks and other

7

exhibits, the Bankruptcy Court could have itself considered the new submissions as a motion to re-open the record and then gone on to consider the checks and other exhibits.  There was no prejudice in doing so because of Brigantine's alternative requested relief and allow them time to examine the checks and file a reply brief. Moreover, this was a bench trial, not a jury trial.  The Bankruptcy Court's decision to deny defendants the opportunity to submit relevant evidence simply because it did not follow the proper procedure exalts form over substance.  After all,

> The theorem is this:  that, merely with a view to rectitude of decision, to the avoidance of the mischiefs attached to undue decision, no species of evidence whatsoever, willing or unwilling, ought to be excluded

Jeremy Bentham, Rationale of Judicial Evidence, Vol. I. 1 (John S. Mill ed., Fred B. Rotham & Co., 1995) (1827).

Because under the circumstances present here, the Bankruptcy Court abused its discretion in striking the exhibits rather than allowing Brigantine's alternative request for time to examine the and file a reply brief, the Court cannot determine whether defendants should be credited for payments reflected by the checks made to laborers. That requires factual analysis which is not appropriate for this Court, as an appellate court, to consider in the first instance based on a record different than that before the Bankruptcy Court.  Thus, the case must be remanded for a determination as to whether Pasek is entitled to credit for any labor expenses in light of the additional documents.

Brigantine also notes that Pasek does a much better job "tracing the money" in its appeal brief that in its trial brief.  Pasek, on the other hand, says that the Bankruptcy Court did not delve far enough into the record.  While the Court is constrained to observe that Pasek has indeed presented a more cogent analysis of tracing the labor

expenses on appeal, the Bankruptcy Court was not deficient in its examination of the record that was before it excluding the checks and other exhibits.

### 3.  Fringe Benefits

Pasek contends that he paid $29,328.63 in fringe benefits.  The Bankruptcy Court carefully reviewed defendants' documentation and concluded that some, but not all, of the asserted payments could be credited.  Pasek, however, does not provide a discrete argument on appeal as to how the Bankruptcy Court erred.  In light of this, as well as the Court's review of the record, the Bankruptcy Court did not err in crediting Pasek for $19,226.47 in fringe benefits.

### 4.  Equipment, Fuel, Bonds, and Insurance

Pasek says expenditures for equipment, fuel, bonds, and insurance should be considered proper payments under the MBTFA, relying on Sellars v. United States, 938 F. Supp. 432 (E.D. Mich. 1996) for the proposition that trust funds under the MBTFA can be used for any construction expenses.  The Bankruptcy Court rejected this argument.

In Sellars, the issue was whether employment taxes could be paid from trust funds.  The court held that they could because they fell within the language of the statute which says that a contractor pay monies "due laborers, subcontractors, materialmen, or others entitled to payment."  The court reasoned:

> This language evidences a statutory intent to protect not just subcontractors, materialmen, or laborers, but "others entitled to payment" who are not technically laborers, subcontractors, or materialmen... This Act permits the construction contract proceeds to be used for any construction expenses including all taxes and other charges lawfully imposed on the wages for

construction labor.

Sellars, 938 F. Supp. at 434-35.  The Bankruptcy Court rejected defendants' argument

that Sellars held that "any construction expenses" may be properly paid under the

MBTFA, stating:

> The conclusion in Sellars goes too far.  There is simply no basis to extend
> the statute to cover *any* construction expenses.  If the legislature had intended all
> construction costs to be included in the statute, it would have so stated in Section
> 1, rather than limit the statute to laborers, materialmen, and subcontractors.

Bank. Opinion at p. 6-7.  The Court agrees.  Sellars involved the narrow issue of

whether a contractor could use trust funds to pay employment taxes if those taxes

related to wages on the project.  The Court held that "to pay employment taxes is

appropriate so long as the employment taxes apply or relate to the wages paid on the

projects for which the contractor received the trust funds." Sellars, 938 F. Supp. at 434.

Sellars did not address whether equipment, fuel, insurance, bonds or other expenses

could be paid with trust funds.  The statement in Sellars must be read in context of the

issue before the court.  Clearly, the payment of employment taxes is akin to a contractor

paying its employees, a labor expense, which the MBTFA specifically allows.  Thus, the

Bankruptcy Court did not err in failing to credit defendants' expenditures on equipment,

fuel, insurance, and bonds.  Moreover, as to equipment and fuel, it is clear that these

items do not constitute material.  See KMH Equip. Co. v. Chas. J. Rogers, Inc., 305

N.W. 2d 266, 267 (Mich. App. 1981) (stating that "the term 'material' has been

consistently defined by the Michigan Supreme Court as those items consumed by the

construction or which form a part of the finished structure").  Finally, based on the

record before the Bankruptcy Court, the arguments and authority of counsel as to the

10

propriety of including these expenses under the MBTFA, it cannot be said the Bankruptcy Court erred in failing to credit these expenses.

### 5. Materials

Pasek says $69,621.48 was spent on materials.  The Bankruptcy Court reviewed the record and found that defendants were entitled to credit for only one materials expenditure due to lack of supporting documentation for the other expenditures.  Having reviewed the record, the Court cannot say that the Bankruptcy Court clearly erred in this regard.  Rather, the Bankruptcy Court conducted a thorough review of the relevant documents.  Thus, Pasek is only entitled to credit for $33,835.92 materials expenditures.

### 6. Subcontractors

Pasek says he should be credited with $20,074.22 in payments to subcontractors for work on the Brigantine project.  Again, the Bankruptcy Court found that defendants were only entitled to partial credit due to lack of supporting documentation.  The Bankruptcy Court gave Pasek credit for three payments, totaling $12,599.22.  This finding was not clearly erroneous based on the record.

### 7. Reimbursements

Pasek claims $15,603.75 was spent reimbursing employees who purchased materials for the Brigantine project.  The Bankruptcy Court denied credit for lack of documentation.  On appeal, Pasek presents no argument but simply cites Defendants' Trial Exhibit 14, which are copies of GRS checks with no supporting documentation, as he did before the Bankruptcy Court.  The Bankruptcy Court did not clearly err in failing to give Pasek credit for the alleged reimbursements; Exhibit 14 simply does not

establish that this expenditure should be credited.

IV.  Conclusion

For the reasons stated above, the decision of the Bankruptcy Court is AFFIRMED IN PART, REVERSED IN PART and REMANDED for proceedings consistent with this opinion.  Specifically, the Bankruptcy Court shall determine whether Pasek is entitled to credit for labor payments during the relevant time, based on the record including the exhibits attached to his original trial brief.

SO ORDERED.


 s/Avern Cohn                                        
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated: May 10, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 10, 2005, by electronic and/or ordinary mail.

 s/Julie Owens                                       
Case Manager
(313) 234-5160